**17-3388-cv**
*Mei Xing Yu v. Hasaki Restaurant, Inc.*

N.Y.S.D. Case #
16-cv-6094(JMF)

# In the

# United States Court of Appeals

# For the Second Circuit

_____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Dec 06 2019

AUGUST TERM, 2018

ARGUED: OCTOBER 10, 2018
DECIDED: DECEMBER 6, 2019

No. 17-3388-cv

MEI XING YU, individual, on behalf of all other employees similarly
situated,
*Plaintiff-Appellee,*

*v.*

HASAKI RESTAURANT, INC., SHUJI YAGI, KUNITSUGA NAKATA,
HASHIMOTO GEN,
*Defendants-Appellants,*

JANE DOE AND JOHN DOE #1–10,
*Defendants.*

_____

Appeal from the United States District Court
for the Southern District of New York.
No. 16 Civ. 6094 – Jesse M. Furman, *Judge.*

_____

Before: WALKER, CALABRESI, AND LIVINGSTON, *Circuit Judges.*

_____

CERTIFIED COPY ISSUED ON 12/06/2019

Mei Xing Yu, an employee of Hasaki Restaurant, filed a claim alleging violations of the Fair Labor Standards Act's ("FLSA" or the "Act") overtime provisions.  Soon thereafter, Hasaki Restaurant sent Mei Xing Yu an offer of judgment, pursuant to Federal Rule of Civil Procedure 68(a), for $20,000 plus reasonable attorneys' fees.  After Mei Xing Yu accepted the offer, the parties filed the offer and notice of acceptance with the district court.  Before the Clerk of the Court could enter the judgment, however, the district court *sua sponte* ordered the parties to submit the settlement agreement to the court for a fairness review and judicial approval, which the district court believed was required under the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).  Both parties disputed the district court's interpretation of the FLSA, Rule 68, and *Cheeks*, and filed an interlocutory appeal.  Upon review of the text of the Act and judicial precedents interpreting the Act, we hold that judicial approval is not required of Rule 68(a) offers of judgment settling FLSA claims.  Accordingly, we REVERSE and VACATE the district court's order and REMAND with instructions to direct the Clerk of the Court to enter the judgment as stipulated in the accepted Rule 68(a) offer.  Judge Calabresi dissents in a separate opinion.

_____

KELI LUI, WILLIAM M. BROWN, Hang and Associates, PLLC, Flushing, NY, *for Plaintiff-Appellee*.

LILLIAN M. MARQUEZ (Louis Pechman, Laura Rodriguez, *on the brief*), Pechman Law Group PLLC, New York, NY, *for Defendants-Appellants*.

1      ADINA H. ROSENBAUM (Sean M. Sherman, Adam
2      R. Pulver, *on the brief*), Public Citizen Litigation
3      Group, *for Court-Appointed Amicus Curiae.*

4                              _____

5   JOHN M. WALKER, JR., *Circuit Judge*:

6      Mei Xing Yu, an employee of Hasaki Restaurant, filed a claim
7   alleging violations of the Fair Labor Standards Act's ("FLSA" or the
8   "Act") overtime provisions.  Soon thereafter, Hasaki Restaurant sent
9   Mei Xing Yu an offer of judgment, pursuant to Federal Rule of Civil
10  Procedure 68(a), for $20,000 plus reasonable attorneys' fees.  After Mei
11  Xing Yu accepted the offer, the parties filed the offer and notice of
12  acceptance with the district court.  Before the Clerk of the Court could
13  enter the judgment, however, the district court *sua sponte* ordered the
14  parties to submit the settlement agreement to the court for a fairness
15  review and judicial approval, which the district court believed was
16  required under the Second Circuit's decision in *Cheeks v. Freeport*
17  *Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).  Both parties disputed
18  the district court's interpretation of the FLSA, Rule 68, and *Cheeks*, and
19  filed an interlocutory appeal.  Upon review of the text of the Act and
20  judicial precedents interpreting the Act, we hold that judicial
21  approval is not required of Rule 68(a) offers of judgment settling
22  FLSA claims.  Accordingly, we REVERSE and VACATE the district
23  court's order and REMAND with instructions to direct the Clerk of
24  the Court to enter the judgment as stipulated in the accepted Rule
25  68(a) offer.  Judge Calabresi dissents in a separate opinion.

26                          **BACKGROUND**

27     Plaintiff-appellee Mei Xing Yu worked as a sushi chef at a
28  restaurant owned and operated by appellant Hasaki Restaurant, Inc.
29  On August 1, 2016, Mei Xing Yu filed a complaint against Hasaki

Restaurant and various individual owners and managers of Hasaki Restaurant (collectively "Hasaki") in the Southern District of New York on behalf of himself and all other employees similarly situated, alleging violations of the overtime provisions of the Fair Labor Standards Act and New York labor laws.

On November 23, 2016, Hasaki mailed Mei Xing Yu a Rule 68 offer of judgment for $20,000 plus reasonable attorneys' fees, costs, and expenses through the date of the offer.  Mei Xing Yu timely accepted the offer of judgment, and on December 8, 2016, Mei Xing Yu filed a letter with the district court (Furman, *J.*) notifying the court of his acceptance.

On December 9, 2016, Judge Furman ordered the parties to submit their settlement agreement to the district court along with a joint letter explaining why the settlement should be approved as fair and reasonable.  Judge Furman explained that he believed our decision in *Cheeks v. Freeport Pancake House, Inc.*[1] required him to scrutinize the parties' settlement to ensure it was fair and reasonable.  *Cheeks* held that stipulated dismissals settling FLSA claims with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) require the approval of either the district court or the Department of Labor ("DOL").  Alternatively, the district court offered the parties the opportunity to argue why they did not believe that judicial approval of the Rule 68(a) offer of judgment was required.

The parties then submitted a joint letter on December 22, 2016, arguing that they did not need judicial approval of their Rule 68(a) offer of judgment to settle Mei Xing Yu's FLSA claims.  On January 13, 2017, the Secretary of Labor filed an amicus brief in a separate case in the Southern District of New York, *Sanchez v. Burgers & Cupcakes*

---

[1] 796 F.3d 199 (2d Cir. 2015).

1    *LLC*,[2] arguing that judicial approval is required when a Rule 68(a)

2    offer of judgment is accepted by a plaintiff raising FLSA claims.

3    Pursuant to a district court order, the parties filed supplemental briefs

4    in response to the Secretary's amicus brief in *Sanchez*, in which the

5    parties maintained their position that judicial approval was not

6    required.

7         On March 20, 2017, the district court issued a brief order

8    concluding that "judicial approval of the parties' settlement is

9    required, notwithstanding the fact that it was reached pursuant to

10   Rule 68(a) of the Federal Rules of Civil Procedure."[3]    Shortly

11   thereafter, the district court issued a follow-up opinion.[4]  The district

12   court reasoned that although Rule 68(a) is phrased in mandatory

13   terms—requiring the clerk of the court to enter judgment of an

14   accepted offer of judgment without any reference to judicial

15   approval—there are exceptions to the Rule's mandatory terms, such

16   as class action and bankruptcy settlements, which require judicial

17   approval.[5]  Accepting the fact that there are exceptions to Rule 68(a)'s

18   mandatory language, the district court concluded that FLSA claims

19   "fall within the narrow class of claims that cannot be settled under

20   Rule 68 without approval by the court (or the DOL)."[6]  Relying on our

21   opinion in *Cheeks*, the district court concluded that while "*Cheeks* may

22   not apply *a fortiori* to a Rule 68 FLSA settlement given its reliance on

23   the language of Rule 41, its reasoning—combined with the fact that

---

[2] Amicus Br., *Sanchez v. Burgers & Cupcakes LLC*, No. 16-cv-3862 (S.D.N.Y. Jan 13., 2017), ECF No. 43.

[3] Order, *Mei Xing Yu v. Hasaki Rest., Inc.*, 16-cv-6094 (S.D.N.Y. Mar. 20, 2017), ECF No. 24.

[4] Opinion and Order, *Hasaki Rest., Inc.*, ECF No. 27; *see also Mei Xing Yu v. Hasaki Rest., Inc.*, 319 F.R.D 111 (S.D.N.Y. 2017).

[5] *Hasaki Rest., Inc.*, 319 F.R.D. at 113–14.

[6] *Id.* at 114.

Case 17-3388, Document 118-1, 12/06/2019, 2720816, Page6 of 32
Case 1:16-cv-06094-JMF   Document 95   Filed 12/06/19   Page 6 of 32

6                                                              No. 17-3388-cv

Rule 68 is not always . . . mandatory—compels the conclusion that parties may not evade the requirement for judicial (or DOL) approval by way of Rule 68."[7]

Noting the existence of "substantial ground for difference of opinion" on the issue, and that the lower courts were divided on the question, the district court certified its order for interlocutory appeal under 28 U.S.C. § 1292(b).[8]  The parties filed a timely notice of appeal in the district court, but did not file a timely § 1292(b) petition for permission to take an interlocutory appeal in this court.  Nonetheless, on October 23, 2017, a panel of our court granted the parties' motion to file a late § 1292(b) petition and then granted the petition.[9]  In addition, because both Mei Xing Yu and Hasaki took the same position before the district court, a panel of our court granted the Public Citizen Litigation Group's ("PCLG") motion to be appointed amicus curiae in order to defend the district court's ruling.[10]  We also invited and received an amicus brief from the Secretary of Labor.[11]

## DISCUSSION

The question before us is straightforward: whether acceptance of a Rule 68(a) offer of judgment that disposes of an FLSA claim in litigation needs to be reviewed by a district court or the DOL for fairness before the clerk of the court can enter the judgment.  The question is one of statutory interpretation.  Therefore, "we begin, as we must, with a careful examination of the statutory text" of both Rule 68(a) and the FLSA.[12]

---

[7] *Id.* at 116.

[8] *Id.* at 117.

[9] *See* No. 17-1067, ECF No. 56 (Oct. 23, 2017).

[10] *See* No. 17-3388, ECF No. 38 (Nov. 28, 2017).  We thank PCLG for their service as court-appointed amicus.

[11] *Id.*

[12] *See Henson v. Santander Consumer USA Inc.,* 137 S. Ct. 1718, 1721 (2017).

## I.      Federal Rule of Civil Procedure 68

Rule 68(a) states:

> At least 14 days before the date set for trial, a party
> defending against a claim may serve on an opposing
> party an offer to allow judgment on specified terms, with
> the costs then accrued.  If, within 14 days after being
> served, the opposing party serves written notice
> accepting the offer, either party may then file the offer
> and notice of acceptance, plus proof of service.  The clerk
> must then enter judgment.[13]

Rule 68(d) provides that "[i]f the judgment that the offeree finally
obtains is not more favorable than the unaccepted offer, the offeree
must pay the costs incurred after the offer was made,"[14] which
includes attorney's fees.[15]   Rule 68(b) discusses the effect of an
unaccepted offer, and Rule 68(c) provides a mechanism for making
an offer after a party's liability has been determined but the extent of
liability remains to be determined.[16]

"The plain purpose of Rule 68 is to encourage settlement and
avoid litigation. . . . The Rule prompts both parties to a suit to evaluate
the risks and costs of litigation, and to balance them against the
likelihood of success upon trial on the merits."[17]

On its face, Rule 68(a)'s command that the clerk *must* enter
judgment is mandatory and absolute.[18]   The Sixth Circuit has

---

[13] Fed. R. Civ. P. 68(a).

[14] Fed. R. Civ. P. 68(d).

[15] *Marek v. Chesney*, 473 U.S. 1, 9 (1985).

[16] Fed. R. Civ. P. 68(b), (c).

[17] *Marek*, 473 U.S. at 5.

[18] *See* 12 Charles A. Wright, Arthur R. Miller, et al., *Federal Practice and Procedure*
§ 3005 (3d ed.) ("Except for . . . rare situations . . . courts are directed by Rule 68 to
enter judgment if an offer has been accepted.").

1   described a district court's role in entering a Rule 68(a) judgment as
2   "ministerial rather than discretionary," because the plain language of
3   the Rule "leaves no discretion in the district court to do anything but
4   enter judgment once an offer has been accepted."[19]   Other circuits
5   have said substantially the same thing,[20] as has this circuit, though in
6   less obvious terms.[21]  Both the common usage of the word "must" and
7   the dictionary definition of that word support this understanding of
8   Rule 68(a)'s mandatory nature.[22]   There is also no doubt that Rule
9   68(a) applies in this case: Rule 1 provides that the Federal Rules of
10  Civil Procedure "govern the procedure in *all* civil actions and
11  proceedings in the United States district courts . . . ."[23]

12      Despite the mandatory language, however, amici and the
13  district court contend that there are "rare situations" in which a
14  district court must approve the proposed resolution of the pending
15  litigation before the stipulated judgment can take legal effect.[24]  They

---

[19] *Mallory v. Eyrich,* 922 F.2d 1273, 1278–79 (6th Cir. 1991).

[20] *See Ramming v. Nat. Gas Pipeline Co. of Am.,* 390 F.3d 366, 370 (5th Cir. 2004) ("A Rule 68 Offer of Judgment is usually considered self-executing."); *Perkins v. U.S. W. Comm'cns,* 138 F.3d 336, 338 (8th Cir. 1998) ("Rule 68 leaves no discretion in the district court to do anything other than enter judgment once an offer of judgment has been accepted."); *Webb v. James,* 147 F.3d 617, 621 (7th Cir. 1998) ("Because of this mandatory directive, the district court has no discretion to alter or modify the parties' agreement."); *cf. Jordan v. Time, Inc.,* 111 F.3d 102, 105 (11th Cir. 1997) (determining that the standard of review for a district court's construction of Rule 68 is *de novo* because "the mandatory language of the rule leaves no room for district court discretion").

[21] *See Bowles v. J.J. Schmitt & Co.,* 170 F.2d 617, 620 (2d Cir. 1948) (stating that one of the "only two occasions under the rules when the clerk may enter final judgment without action of the judge or jury . . . [is] upon notice of acceptance of an offer of judgment under rule 68").

[22] *See Must, Webster's New International Dictionary* (3d ed. 1999) (1a: "is commanded or requested to"; 1b: "is urged to: ought by all means to"; 4: "is required by law, custom, or moral conscience to").

[23] Fed. R. Civ. P. 1 (emphasis added).

[24] Wright & Miller, § 3005.

Case: 17-3388 Document: 118-1 12/06/2019 2722846 Page 9 of 32
Case 1:16-cv-06094-JMF Document 35 Filed 12/06/19 Page 9 of 32

9                                                          No. 17-3388-cv

1    point to various examples in support of their argument that Rule

2    68(a)'s facially mandatory nature is riddled with "a host of situations

3    in which parties may not, without approval of either or both a

4    government agency and a court, enter into a settlement."[25]

5         The first category of examples involves proceedings that are

6    governed by federal rules that explicitly require judicial approval

7    before settlement.   For instance, Federal Rule of Bankruptcy

8    Procedure 9019 specifically requires judicial approval of settlements,

9    and the D.C. Circuit has held that Rule 68(a) offers of judgment

10   settling bankruptcy proceedings must be approved by the

11   bankruptcy court to become effective.[26]   Other circuits have required

12   Rule 68(a) offers of judgment settling class action suits to be approved

13   by the district court before the judgment can be entered.[27]   These

14   circuits have relied on Federal Rule of Civil Procedure 23, which

15   plainly states that "[t]he claims, issues, or defenses of a certified

16   class—or a class proposed to be certified for purposes of settlement—

17   may be settled, voluntarily dismissed, or compromised *only* with the

18   court's approval . . . after a hearing and only on finding that it is fair,

19   reasonable, and adequate . . . ."[28]

20        Amici and the district court also refer to substantive statutes

21   that specifically require the district court's consent before cases

22   involving those statutory causes of action may be settled.   For

23   instance, New York law requires court approval to settle any action

24   "commenced by or on behalf of [an] infant, incompetent or

---

[25] *Hasaki Rest., Inc.,* 319 F.R.D. at 113; *see also* PCLG Br. at 19–20; Sec'y of Labor Br. at 25–26.

[26] *Gordon v. Gouline,* 81 F.3d 235, 239 (D.C. Cir. 1996).

[27] *See id.* at 239–40 (collecting cases).

[28] Fed. R. Civ. P. 23(e), (e)(2) (emphasis added).

Case 17-3388, Document 148-1, 12/06/2019, 2720845, Page10 of 32
Case 1:16-cv-06094-JMF   Document 35   Filed 12/06/19   Page 10 of 32

10                                                                    No. 17-3388-cv

1    conservatee."[29]   And the False Claims Act ("FCA") unambiguously
2    states that a *qui tam* action "may be dismissed only if the court and
3    the Attorney General give written consent to the dismissal and their
4    reasons for consenting."[30]

5         Our circuit has yet to endorse any of these asserted exceptions
6    to Rule 68(a)'s mandatory command that the clerk of the court enter
7    judgment once an offer has been accepted and filed with the court.[31]
8    There is no need for us to consider the validity of these exceptions
9    because they are not at issue here.   But, assuming for the sake of
10   argument that Rule 68(a) offers of judgment are susceptible to judicial
11   review in certain situations, we agree with the district court that the

---

[29] N.Y. C.P.L.R. § 1207; *see also id.* at § 1208.

[30] 31 U.S.C. § 3730(b)(1).

[31] The Dissent and amici suggest that illegal acts and injunctive relief may be
further exceptions to Rule 68.   *See Hasaki Rest., Inc.,* 319 F.R.D. at 114.  While neither
of these situations are at issue here, we note that requiring courts to scrutinize *all*
Rule 68 offers for illegality would transform Rule 68's ministerial act into a
searching inquiry, a judicial modification of the Rule's plain text which we are
reluctant to endorse.   In the event an illegal judgment was entered pursuant to
Rule 68, the defendant in a subsequent enforcement action could raise illegality as
a defense.   *See infra* note 101 and accompanying text.   Alternatively, either party
could challenge the judgment via a Rule 60 motion. *See, e.g., Laskowski v. Buhay,*
192 F.R.D. 480, 484 (M.D. Pa. 2000) (considering and denying a defendant's motion
seeking to void a Rule 68 judgment through Rule 60); *see also infra* note 102 and
accompanying text.   As to injunctive relief, it seems that *Marek* itself involved the
use of Rule 68 in a suit where the plaintiff requested some injunctive relief.   *See*
Roy D. Simon, Jr., *The New Meaning of Rule 68: Marek v. Chesny and Beyond,* 14
N.Y.U. Rev. L. & Soc. Change 475, 485 (1986) (discussing the complaint in *Marek*).
At any rate, we need not address the Rule's application in this context.   Even
assuming *arguendo* that judgments providing for injunctive relief issue only upon
a judge's review, given that such relief involves the exercise of the court's
discretion, *see Hecht Co. v. Bowles,* 321 U.S. 321, 329 (1944) ("An appeal to the equity
jurisdiction conferred on federal district courts is an appeal to the sound discretion
which guides the determinations of courts of equity.") (internal quotation marks
omitted), this point is simply not germane to Rule 68's scope outside of this
context.

1    proper inquiry is "whether FLSA claims fall within the narrow class
2    of claims that cannot be settled under Rule 68 without approval by
3    the court (or the DOL)."[32]  In other words, we must determine, as the
4    Supreme Court in *Marek v. Chesney* explained, whether the FLSA
5    contains "'the necessary clear expression of congressional intent'
6    required 'to exempt the statute from the operation of' Rule 68."[33]  We
7    think the answer is no for the reasons that follow.

8    **II.    The FLSA**

9        The FLSA contains two primary worker protections: first, it
10   guarantees covered employees a federal minimum wage;[34] and
11   second, it provides covered employees the right to overtime pay at a
12   rate of one-and-a-half their regular rate for hours worked above forty
13   hours a week.[35]  "The principal congressional purpose in enacting the
14   [FLSA] was to protect all covered workers from substandard wages
15   and oppressive working hours, 'labor conditions [that are]
16   detrimental to the maintenance of the minimum standard of living
17   necessary for health, efficiency and general well-being of workers.'"[36]

18       Ever since the FLSA was enacted in 1938, it has allowed for a
19   private right of action by a covered employee against any employer
20   who violates the Act's minimum wage and overtime pay provisions
21   to recover unpaid wages, together with "an additional equal amount
22   as liquidated damages."[37]  In 1949, Congress amended the FLSA and

---

[32] *Hasaki Rest., Inc.,* 319 F.R.D. at 114.

[33] *Marek,* 473 U.S. at 11–12 (quoting *Califano v. Yamasaki,* 422 U.S. 682, 700 (1979) (modifications incorporated)).

[34] *See* 29 U.S.C. § 206.

[35] *See* 29 U.S.C. § 207.

[36] *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a) (captioned "Congressional finding and declaration of policy)).

[37] Fair Labor Standards Act of 1938, Pub. L. No. 75-718, 52 Stat. 1069 (codified as amended at 29 U.S.C § 216(b) (2018)).

Case 17-3388, Document 118-1, 12/06/2019, 2720806, Page12 of 32
Case 1:16-cv-06094-JMF   Document 35   Filed 12/06/19   Page 12 of 32

12                                                                No. 17-3388-cv

1    authorized the Administrator of the Wage and Hours Division of the
2    DOL to "supervise payment of the unpaid minimum wages or the
3    unpaid overtime compensation owing to any employee or
4    employees."[38]  Congress also authorized the Administrator to bring
5    an action on behalf of, and upon the written request of, a covered
6    employee to recover unpaid minimum wages or overtime
7    compensation.[39]

8         These provisions providing a private right of action, DOL-
9    supervised payment, or DOL action on behalf of covered employees
10   all remain in effect today and are contained in § 216 of the Act, with
11   minor amendments not material here.[40]  Nowhere in the text of the
12   current or prior versions of § 216, however, is there a command that
13   FLSA actions cannot be settled or otherwise dismissed without
14   approval from a court.  The provisions of § 216 simply set forth
15   different ways in which covered employees (or the DOL on behalf of
16   covered employees) may assert the substantive rights afforded to
17   them by the Act.  The lack of any explicit requirement for judicial
18   approval before a settlement or dismissal can be entered under § 216
19   is what distinguishes the FLSA from the statutory examples the
20   district court and amici have cited as evidence of exceptions to Rule
21   68(a)'s mandatory character.  Each of those statutes contains an
22   explicit requirement that the court must approve the dismissal or
23   settlement before it can be entered; the FLSA contains no similar

---

[38] Fair Labor Standards Act of 1938, Pub. L. No. 81-393, 63 Stat. 919 (1949) (codified as amended at 29 U.S.C. § 216(c) (2018)).

[39] *Id.*  This provision has since been amended, such that this power is now vested in the Secretary of Labor, rather than the Administrator.  Furthermore, it is no longer necessary for the Secretary to receive the written request of an employee for the Secretary to initiate an action on behalf of a covered employee.  *See* 29 U.S.C. § 216(c) (2018).

[40] *See* 29 U.S.C. §§ 216(b), (c) (2018).

1    command.

2          Ordinarily, the lack of any textual requirement for judicial

3    approval would be the end of the analysis because "the first canon of

4    statutory construction is that 'a legislature says in a statute what it

5    means and means in a statute what is says there.'  Indeed, 'when the

6    words of a statute are unambiguous . . . this first canon is also the last:

7    judicial inquiry is complete.'"[41]  Nonetheless, amici and the Dissent

8    argue that we should read a judicial review requirement into the

9    FLSA for four reasons: (1) Supreme Court precedents interpreting

10   FLSA rights as nonwaivable require it; (2) the statutory history of the

11   FLSA demonstrates a Congressional intent to only permit judicially

12   or DOL-approved settlements; (3) this circuit's decision in *Cheeks*,

13   which explained the need for judicial review of Rule 41(a)(1)(A)(ii)

14   dismissals with prejudice of FLSA claims, compels a similar result

15   with respect to Rule 68 offers of judgment; and (4) it would further

16   "the underlying purpose of the FLSA, which is a uniquely protective

17   statute."[42]  We address each of these points in turn.

18              a.    Supreme Court Precedent

19         Amici's argument for why we must read a judicial approval

20   requirement into the FLSA rests upon a few decisions by the Supreme

21   Court beginning in 1945.  Amici asserts that these decisions stand for

22   the proposition that "there are only two ways in which FLSA claims

23   can be settled or compromised by employees": either through a DOL-

24   supervised payment of unpaid wages by the employer under § 216(c),

25   or a stipulated judgment approved by a district court in a private

---

[41] *United States v. Piervinanzi,* 23 F.3d 670, 677 (2d Cir. 1994) (internal citation and alteration omitted) (quoting *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54 (1992)).

[42] Sec'y of Labor Br. at 6.

Case 1:17-3388, Document 118-1, 12/06/2019, 2729981, Page 14 of 32
Case 1:16-cv-06094-JMF   Document 35   Filed 12/06/19   Page 14 of 32

14                                                              No. 17-3388-cv

1    action for unpaid wages under § 216(b).[43]  We disagree.

2        In *Brooklyn Savings Bank v. O'Neil,* the Supreme Court

3    considered "whether in the absence of a bona fide dispute between

4    the parties as to liability, [an employee's] written waiver of his right

5    to liquidated damages under [the FLSA] bars a subsequent action to

6    recover liquidated damages."[44]   The Court acknowledged that

7    nothing in "the statutory language, the legislative reports nor the

8    debates indicates that the question at issue was specifically

9    considered and resolved by Congress."[45]   The Court believed,

10   however, that the Congressional intent "to protect certain groups of

11   the population from substandard wages and excessive hours"[46]

12   counseled in favor of concluding that Congress did not intend for the

13   FLSA's minimum wage, overtime, and liquidated damages rights to

14   be capable of waiver by employees.  It reasoned that "waiver of

15   statutory wages by agreement would nullify the purpose of the Act,"

16   as would "waiver of the employee's right to liquidated damages."[47]

17   Thus, it concluded that "contracts for waiver of liquidated damages .

18   . . are void as contrary to public policy," and will not be entertained

19   by courts as an employer's affirmative defense in a subsequent action

20   by an employee to recover liquidated damages.[48]

21       In the two consolidated cases[49] under consideration in *Brooklyn*

22   *Savings*, the employees released their FLSA rights not as part of a

---

[43] PCLG Br. at 12 (quoting *Hasaki Rest., Inc.,* 319 F.R.D. at 112).

[44] 324 U.S. 697, 704 (1945).

[45] *Id.* at 705–06.

[46] *Id.* at 706–07.

[47] *Id.* at 707.

[48] *Id.* at 710.

[49] *Brooklyn Savings* actually dealt with three consolidated cases, but the third case dealt with a separate issue of whether an employee suing to collect unpaid wages under FLSA is also entitled to interest.

Case 1:16-cv-06094-JMF   Document 35   Filed 12/06/19   Page 15 of 32

1    settlement of a bona fide dispute between the employers and
2    employees, but as a "mere waiver."[50]   The Court stressed this
3    distinction.[51]   *Brooklyn Savings*' holding that mere waivers of an
4    employee's right to liquidated damages are unenforceable expressly
5    left open the question of "what limitation, if any, [§ 216(b)] of the Act
6    places on the validity of agreements between an employer and
7    employee to settle claims arising under the Act if the settlement is
8    made as the result of a bona fide dispute between the two parties, in
9    consideration of a bona fide compromise and settlement."[52]

10        That unresolved question was partially addressed the
11   following year in *D.A. Schulte, Inc. v. Gangi*.[53]   Unlike in *Brooklyn
12   Savings*, the employees in *Gangi* did not simply sign away their rights.
13   Under threat of suit by the employees, the employer paid the full
14   amount of back pay and, in return, obtained a release of the
15   employees' statutory right to liquidated damages, notwithstanding
16   the employer's sincere belief that the employees were not covered by
17   the FLSA because the interstate commerce nexus was minimal.[54]   "The
18   primary issue presented [was] whether the [FLSA] precludes a bona
19   fide settlement of a bona fide dispute over the coverage of the Act on
20   a claim for overtime compensation and liquidated damages where the
21   employees receive the overtime compensation in full."[55]

22        The Supreme Court sided with the employees.   The Court
23   acknowledged that the releases were obtained in settlement of a bona
24   fide dispute as to coverage, but, adopting the reasoning from *Brooklyn*

---

[50] 324 U.S. at 703–04, 713–14.
[51] *Id* at 713–14.
[52] *Id.* at 714.
[53] 328 U.S. 108 (1946).
[54] *Id.* at 111–12.
[55] *Id.* at 110.

Case 17-3388, Document 118-1, 12/06/2019, 2729816, Page16 of 32
Case 1:16-cv-06094-JMF Document 35 Filed 12/06/19 Page 16 of 32

16                                                          No. 17-3388-cv

1   *Savings*, it held that "the remedy of liquidated damages cannot be
2   bargained away by bona fide settlements of disputes over
3   coverage."[56] The Court, however, expressly reserved the question of
4   whether waiver or compromise of FLSA rights is permissible "in
5   other situations which may arise, such as a dispute over the number
6   of hours worked or the regular rate of employment."[57]

7        Relevant to our analysis, the Court, in dicta in a footnote, also
8   seemed to indicate that the reasons behind not permitting waivers in
9   private settlements might not hold for stipulated judgments in
10  judicial actions brought by employees pursuant to § 216(b).[58] In
11  pertinent part, the Court stated:

12        Petitioner draws the inference that bona fide stipulated
13        judgments on alleged Wage-Hour violations for less than
14        the amounts actually due stand in no better position than
15        bona fide settlements. Even though stipulated
16        judgments may be obtained, where settlements are
17        proposed in controversies between employers and
18        employees over violations of the Act, by the simple
19        device of filing suits and entering agreed judgments, we
20        think the requirements of pleading the issues and
21        submitting the judgment to judicial scrutiny may
22        differentiate stipulated judgments from compromises by
23        the parties. At any rate the suggestion of petitioner is
24        argumentative only as no judgment was entered in this
25        case.[59]

26        In the intervening seven decades since *Gangi*, the Supreme
27  Court has never resolved these lingering questions about when and
28  how employees can release their FLSA rights. In 1981, the Court

---

[56] *Id.* at 114–15.

[57] *Id.*

[58] *Id.* at 113 n.8.

[59] *Id.*

Case 1:16-cv-06094-JMF Document 35 Filed 12/06/19 Page 17 of 32

reiterated in passing its holdings in *Brooklyn Savings* and *O'Neil* in *Barrentine v. Arkansas-Best Freight Systems, Inc.*, but did not expand the holdings from those earlier decisions or otherwise consider the questions those decisions left open.[60]

Notably absent from any of these Supreme Court interpretations of the FLSA is any discussion on whether a settlement or dismissal of an action to vindicate FLSA rights under § 216(b) is conditioned on court approval. Even the dicta in the footnote in *Gangi* did not discuss whether judicial approval was actually necessary before parties could enter a stipulated judgment resolving FLSA claims. The Supreme Court never said, as the Dissent suggests, that "court-*supervised* settlements might be valid under the FLSA."[61] Rather, the Court stated that "by the simple device of filing suits and entering agreed judgments, we think the requirement of pleading the issues and submitting the judgment to judicial scrutiny may *differentiate* stipulated judgments from compromises by the parties."[62] In other words, the act of filing the suit, airing the parties' dirty laundry in public and before a judge, *and then* coming to an agreement distinguishes stipulated judgments from private, back-room compromises that could easily result in exploitation of the worker and the release of his or her rights. Indeed, the Supreme Court itself has at least on one occasion ordered a district court to enter a stipulated judgment in a FLSA action for only two-thirds the amount due in statutory wages and liquidated damages while the case was on appeal

---

[60] 450 U.S. 728, 740 (1981). *Barrentine* addressed the unrelated question of whether employees could bring an action alleging an FLSA violation after they had unsuccessfully submitted a claim based on the same underlying facts to a joint grievance committee pursuant to their union's collective-bargaining agreement, answering the question in the negative.

[61] Diss. Op. at 10 (emphasis added).

[62] *Gangi*, 328 U.S. at 114 n.8 (emphasis added).

Case: 17-3388 Document: 118-1 12/06/2019 2720816 Page 18 of 32
Case 1:16-cv-06094-JMF Document 35 Filed 12/06/19 Page 18 of 32

18                                                          No. 17-3388-cv

1    apparently without reviewing the stipulation for fairness.[63]  Rule 68(a)

2    judgments are one such form of stipulated judgment and, by that

3    Rule's plain terms, do not require court-supervision.  Nothing the

4    Supreme Court has said suggests a different rule, much less amounts

5    to "'the necessary clear expression of congressional intent' required

6    'to exempt the statute from the application of Rule 68.'"[64]

7         For this reason, we cannot accept the Dissent's characterization

8    of our opinion as creating a "third, implied method of resolving"

9    FLSA claims.[65]  The Dissent refers to the settling of FLSA claims

10   through Rule 68(a) judgments as "private settlements" like those

11   prohibited by the Supreme Court in *Brooklyn Savings* and *Gangi*.[66]  But

12   Rule 68(a) judgments are not at all like those private settlements; they

13   are publicly-filed, stipulated judgments between parties to an action

14   brought in a court of competent jurisdiction after litigation has been

15   commenced pursuant to § 216(b) of the FLSA.  Nothing in the

16   Supreme Court's decisions prohibit settling FLSA claims through

17   such stipulated judgments.  To the contrary, as conceded by the

18   Dissent, these decisions allow that settlements in the context of

---

[63] *See North Shore Corp. v. Barnett,* 323 U.S. 679 (1944) ("The judgment of the Circuit Court of Appeals is vacated, the judgment of the District Court is modified in accordance with the stipulations signed by counsel for the parties and the case is remanded to the District Court for the Southern District of Florida with directions to enter the judgment as modified."); *see also Gangi,* 328 U.S. at 144 n.8 (referencing *Barnett* as an example of a settlement of a FLSA claim by stipulated judgment ordered to be entered by the Supreme Court); Reply Br. for the Pet'r, *Brooklyn Savings Bank v. O'Neil,* 1945 WL 48260, at *19 (U.S. Jan. 1945) (describing the terms of the stipulated judgment as recovery to two-thirds of the statutory wages and liquidated damages owed).

[64] *See Marek,* 473 U.S. at 11–12 (quoting *Califano,* 422 U.S. at 700 (modifications incorporated)).

[65] *See* Diss. Op. at 1–2.

[66] *See, e.g., id.* at 2, 3, 4, 6, 13, 14.

Case 17-3388, Document 118-1, 12/06/2019, 2720846, Page19 of 32
Case 1:16-cv-06094-JMF  Document 35-2  Filed 12/06/19  Page 19 of 32

19                                                    No. 17-3388-cv

1   ongoing FLSA litigation may be permissible.[67]  Nor, contrary to the
2   Dissent's intimation, have any other circuits held that FLSA claims
3   cannot be settled pursuant to a Rule 68(a) stipulated judgment
4   without judicial approval.[68]  The laundry list of courts and cases
5   referenced by the Dissent hold only that purely private settlements of
6   FLSA claims, independent of any litigation, are prohibited without
7   judicial approval or DOL supervision; this is a holding that is
8   compelled by *Gangi* and with which we take no issue.  None of those
9   courts or cases addressed a Rule 68(a) stipulated judgment, the type
10  of settlement at issue in this case.

11      In *Brooklyn Savings* and *Gangi*, the Supreme Court held that
12  private contractual waivers of worker's FLSA rights were against
13  public policy.  This is a very different thing from holding that judicial
14  approval is required before parties, usually represented by counsel,
15  may settle a litigated FLSA dispute pursuant to Rule 68(a).

16      Despite the absence of any discussion by the Supreme Court in
17  *Brooklyn Savings*, *Gangi*, or *Barrentine* as to whether judicial approval
18  is required to settle actions raising FLSA claims, amici assert that
19  these cases laid "the foundation" for such a requirement, and from
20  that unsure foundation, make the leap that Rule 68(a) offers of
21  judgment settling FLSA claims must be approved by a judge before
22  the clerk may enter the judgment.[69]  We are not prepared to make that
23  interpretive leap in the context of Rule 68(a) offers of judgment absent
24  any indication from Congress or the Supreme Court that the FLSA
25  requires such judicial approval.[70]  This is especially so when the

---

[67] *See Gangi,* 328 U.S. at 114 n.8; *see also* Diss. Op. at 9–10.

[68] *See* Diss. Op. at 17.

[69] Sec'y of Labor Br. at 13; *see also* PCLG Br. at 11–13.

[70] Our circuit has made that leap with respect to voluntary dismissals with prejudice under Rule 41(a)(1)(A)(ii) in *Cheeks*.  We decline to do the same with

Case 17-3388, Document 118-1, 12/06/2019, 2720846, Page20 of 32
Case 1:16-cv-06094-JMF   Document 35   Filed 12/06/19   Page 20 of 32

20                                                        No. 17-3388-cv

1    language of the Act itself fails to provide a scintilla of textual support

2    for such a requirement, in the face of Rule 68(a)'s explicit textual

3    command that the clerk of the court *must* enter stipulated

4    judgments.[71]

5          Amici also point to the fact that the Supreme Court concluded

6    that FLSA rights are not waivable despite the absence of any "'specific

7    provisions prohibiting waiver of rights . . . or providing means by

8    which compromises and settlements can be approved.'"[72]  To be sure,

9    there is nothing in the text of the FLSA specifically declaring that the

10   minimum wage, overtime pay, and liquidated damages rights created

11   by the Act cannot be waived.  Those cases, however, did not address

12   the question of prior judicial approval of § 216 settlements under Rule

13   68(a), and we discern from them no requirement that a court must

14   make the same sort of purposive interpretive leap in resolving a

15   question they did not address.

16                **b.**  Extrinsic Evidence and Statutory History[73]

17         Appointed amicus contends that the lack of any judicial

18   approval requirement in the text of the FLSA is not dispositive,

---

respect to Rule 68(a) offers of judgment, as will be discussed.  *See infra,* Section II(a).

[71] *See Califano,* 442 U.S. at 700 (requiring a "necessary clear expression of congressional intent to exempt" a statutorily-created cause of action "from the operation of the Federal Rules of Civil Procedure," since Rule 1 provides that the Rules govern the procedure in the United States district courts in *all* suits of a civil nature (internal quotation marks omitted)).

[72] *Id.* at 15–16 (brackets omitted) (quoting *Brooklyn Savings,* 324 U.S. at 713).

[73] The dissent accuses the majority of "ignoring completely" the statutory history in this case and of confusing statutory history with legislative history.  This is a misreading of the opinion.  While we consider extrinsic evidence, including legislative history, as unhelpful when the statutory text is unambiguous, we do not "ignore" the statutory history.  Indeed, we fully address it in this section in discussing the 1949 Amendment that added § 216(c), but we simply reach a different conclusion than that of the dissent.

Case 17-3388, Document 118-1, 12/06/2019, 2720816, Page21 of 32

because "a statute's requirements . . . also include judicial interpretations of the statute, which are reached through application of traditional tools of statutory construction, including examination of the statute's text, legislative history, structure, and purpose."[74]  We find this argument unpersuasive.  A statute's requirements are not so holistically determined.

As we stated above, the first "cardinal canon" of statutory interpretation is to look at the text.[75]  It is only when a statute's text is ambiguous that we turn to other tools of statutory interpretation to help clarify the ambiguity.[76]  In this case, there is nothing ambiguous about whether the FLSA requires judicial approval of offers of judgment before actions brought under § 216(b) can be settled or dismissed, because the text of the FLSA is devoid of any such requirement, even as it details, in § 216(b), the precise contours of how employees can file suit to vindicate their FLSA rights.

Section 216(b) states that an employer is liable for unpaid wages and an equal amount in liquidated damages; that such an action may be maintained in any federal or state court of competent jurisdiction; that such an action may be commenced by an individual employee or by an employee on behalf of other employees similarly situated; that no employee shall be considered a party plaintiff to any such collective action unless he gives his consent in writing to become a party, and such consent is filed with the court; that in such an action,

---

[74] PCLG Br. at 15 (internal quotation marks omitted).

[75] *Germain*, 503 U.S. at 253.

[76] *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material.  Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise *ambiguous* terms." (emphasis added)).

1    reasonable attorney's fees and costs are to be paid by the defendant;

2    and that an employee's private right of action terminates if the

3    Secretary of Labor decides to initiate an action on behalf of

4    employees.[77]   In this context of painstaking attention to procedural

5    requirements, "[w]e do not lightly assume that Congress has omitted

6    from its adopted text requirements that it nonetheless intends to

7    apply." *Jama Immigration & Customs Enforcement*, 543 U.S. 335, 341

8    (2005).   Given that "Congress has shown elsewhere in the same

9    statute" how to require supervision of settlements, *id.* § 216(b)'s

10   silence as to whether judicial approval is required before an action

11   initiated by employees under the provision can be settled via Rule

12   68(a) (or any other procedure) speaks volumes.   Finding not even

13   arguable ambiguity[78] as to this question in the statute's text, there is

14   no need to turn to extrinsic evidence to help decipher the statute.[79]

---

[77] *See* 29 U.S.C. § 216(b).

[78] The Dissent takes issue with our characterization of the text as unambiguous because it is absolutely silent as to any judicial review requirement.  We agree that ambiguity usually goes to the meaning of words.  *See* Diss. Op. at 4.  But this is because parties seldom make the argument that a statute requires something despite the absence of any statutory hint of such a requirement.  Ambiguity usually comes into play when the parties disagree about what a statute says because parties can reasonably differ over how to interpret the words of a statute. *See, e.g., MCI Telecommunications Corp. v. AT&T Co.*, 512 U.S. 218, 227 (debating the scope of the FCC's authority to "modify" any requirement of § 203 of the Communications Act and noting that "most cases of verbal ambiguity in statutes involve . . . a selection between accepted alternative meanings shown as such by many dictionaries").  A statute that is utterly silent as to an alleged requirement is equally unambiguous.  Our allegedly "unusual" use of the term unambiguous, according to the Dissent, is the product of Amici and the Dissent's even more unusual argument that silence can breed ambiguity.  Judicial insertion of a positive command into a statute that is silent on the point goes beyond interpretation; it is an usurpation of the legislative function.

[79] Even if we were to consider legislative history, nothing in that history indicates Congress intended for judicial approval to be required before actions raising FLSA claims could be settled or dismissed, and amici have pointed none.

The Dissent points to the 1949 amendment of the FLSA, in which Congress added § 216(c) and authorized the DOL to supervise private settlements of FLSA claims, as evidence that Congress intended to prohibit the private settlement of all FLSA claims unless supervised by the DOL or a court.[80]  This amendment does not affect our understanding of whether the FLSA requires *judicial* approval of a Rule 68(a) stipulated judgment.  The amendment only grants *the DOL* authority to supervise private FLSA settlements with finality; it says nothing about whether courts must approve stipulated judgments or other settlements or dismissals.  Furthermore, and as discussed, there is a critical distinction between purely private settlements between parties and stipulated judgments between parties, the latter of which occur in the context of publicly-filed, ongoing litigation subject to judicial scrutiny.[81]  The ability of parties to enter stipulated judgments once a case has been publicly filed, pleaded, and submitted to judicial scrutiny does not, as the Dissent contends,[82] render § 216(c) superfluous, because that section continues to apply to private settlements outside the context of litigation.[83]  At bottom, we do not believe it is reasonable to interpret

---

[80] *See* Diss. Op. at 11–13.

[81] *See supra* Section II(a).; *see also Gangi,* 328 U.S. at 113 n.8.

[82] *See* Diss. Op. at 6–7.

[83] Far from being superfluous, the statutory history relied on by the Dissent supports the view that Congress enacted Section 216(c) in order to provide employers with an efficient and expert *non-judicial* alternative for resolving FLSA liability.  Indeed, the Dissent notes that Section 216(c) was enacted in response to a new reluctance among employers to voluntarily remit back pay in cooperation with the DOL without a need for court proceedings.  *See* Diss Op. at 11–12.  This reluctance was due to fears that DOL supervision was insufficient to protect employers from later suits in the aftermath of *Brooklyn Savings* and *Gangi*.  *See id.* (citing Fair Labor Standards Amendments of 1949, S. Rep. No. 81-640, 81st Cong., 1st Sess., *reprinted in* 1949 U.S.C.C.A.N. 2241, 2248).  As noted above, Rule 68(a)'s filing and pleading requirements impose burdens on employers and employees looking to resolve FLSA disputes.  Voluntary and DOL-supervised settlements do

1    Congress' amendment authorizing the DOL to supervise private

2    FLSA settlements as prohibiting Rule 68(a) stipulated judgments

3    settling FLSA claims in the context of ongoing litigation when the

4    amendment does not pertain to judicial actions.[84]  Congress does not

5    "hide elephants in mouseholes."[85]

---

not impose these same (or equivalent) burdens.  Section 216(c) is thus fairly understood as a distinct provision which is nonetheless fully compatible with the goals of Rule 68 in encouraging efficient settlement of claims.

[84] Indeed, interpreting Congress' amendment adding § 216(c) in the way the Dissent does would seemingly prohibit *all* other forms of settling FLSA claims, including judicially-approved settlements, because Congress only authorized the DOL to settle FLSA claims.  Nonetheless, the Dissent, and to our knowledge, every circuit to address the issue, accepts that courts may approve FLSA settlements and dismissals—even if there is disagreement as to whether such approval is *required*— despite the fact that § 216(c) only grants supervisory authority to the DOL.  The consistency of Rule 68 and the 1949 amendments is all the more evident considering that Rule 68 had been in existence for approximately ten years by the time § 216(c) was adopted.  *See Marek*, 473 U.S. at 8–9 (discussing the history of Rule 68 and noting that the rules were adopted in 1938).

[85] *See Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001).  The Dissent also suggests that the Portal-to-Portal Act of 1947 reflects Congressional endorsement of its broad reading of *Brooklyn Savings* and *Gangi*.  Diss. Op. at 12 n.5.  However, the Dissent's discussion omits the express congressional disapproval of the Supreme Court's FLSA jurisprudence embodied in the Congressional Findings attached to the Portal-to-Portal Act.  *See* 29 U.S.C. § 251(a).  Those findings open with an express statement that "the Fair Labor Standards Act of 1938 . . . has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees" and warned that if these interpretations "were permitted to stand . . . the courts of the country would be burdened with excessive and needless litigation . . ."  *Id.*  This language echoed that of Justice Jackson, citing to *Brooklyn Savings* and *Gangi* and writing in the same year as the Portal-to-Portal Act, that the Court's FLSA jurisprudence had caused "interminable litigation[]stimulated by a contingent reward to attorneys."  *Walling v. Portland Terminal Co.*, 330 U.S. 148, 155 (1947) (Jackson, *J.*, concurring).  Taken together, this language suggests that Congress was more concerned with protecting employers from the excessive litigation caused by the Supreme Court's FLSA jurisprudence than with restricting the means by which parties could settle.  In line with these contemporary views of *Brooklyn Savings* and *Gangi*, we decline to use the "rubric of 'unequal bargaining power'" to "promulgate social values"

In light of the unambiguously mandatory command of Rule 68(a) for the clerk of the court to enter offers of judgment when they are accepted, and because we find no indication by Congress or the Supreme Court that the FLSA requires judicial approval of stipulated judgments concerning FLSA claims in the context of ongoing litigation, we decline to pull such a requirement out of thin air with respect to Rule 68(a) offers of judgment settling FLSA claims. Neither amici nor the Dissent has identified a reliable source in the statutory history that demonstrates "the necessary clear expression of congressional intent required to exempt the statute from the operation of Rule 68."[86]

### c. *Cheeks v. Freeport Pancake House, Inc.*

Amici also contend that a prior decision from our circuit—*Cheeks v. Freeport Pancake House, Inc.*—is determinative of whether Rule 68(a) offers of judgment involving FLSA claims must be approved by a court before they may be entered. While we acknowledge the similarities between the two cases, we decline to extend *Cheeks*'s holding requiring judicial approval for stipulated dismissals settling FLSA claims with prejudice under Rule 41(a)(1)(A)(ii) to the context of Rule 68(a) offers of judgment.

The question in *Cheeks* was whether parties could enter a "stipulated dismissal of FLSA claims with prejudice, without the involvement of the district court or DOL, that may be enforceable," pursuant to Rule 41(a)(1)(A)(ii).[87] Rule 41(a)(1)(A)(ii) states that "[s]ubject to Rules 23(e), 23.1(c), 23.2, and 66 and *any applicable federal*

---

which "intrude upon the legislative sphere" and "reflect imprecise apprehensions of economics and desirable public policy." *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 861 (5th Cir. 1975); *see also id.* at 162.

[86] *Marek*, 473 U.S. at 11–12 (internal quotation marks and modifications omitted).

[87] *Cheeks*, 796 F.3d at 204.

Case 1:16-cv-06094-JMF   Document 35-2   Filed 12/06/19   Page 26 of 32
Case 17-3388, Document 118-1, 12/06/2019, 2720816, Page26 of 32

26                                                                No. 17-3388-cv

1   *statute*, the plaintiff may dismiss an action without a court order by

2   filing . . . a stipulation of dismissal signed by all parties who have

3   appeared."[88]   *Cheeks* thus turned on whether the FLSA was an

4   "applicable federal statute," without narrowing that reference to the

5   text of the statute, such that court approval was necessary before

6   FLSA claims could be dismissed with prejudice by stipulation of the

7   parties.[89]   The *Cheeks* Court concluded that the FLSA met the

8   "applicable federal statute" exception to Rule 41(a)(1)(A)(ii) because

9   of "the unique policy considerations underlying the FLSA" and the

10  "underlying purpose" of the Act.[90]   Therefore, it held that stipulated

11  dismissals settling FLSA claims with prejudice pursuant to Rule

12  41(a)(1)(A)(ii) require approval of either the district court or the DOL

13  to take effect.[91]

14      The holding in *Cheeks* was limited to Rule 41(a)(1)(A)(ii)

15  dismissals with prejudice.   The court did not consider "whether

16  parties may settle such cases without court approval or DOL

17  supervision by entering into a Rule 41(a)(1)(A) stipulation *without*

18  prejudice."   Nor did it address other avenues for dismissal or

19  settlement of claims, including Rule 68(a) offers of judgment.[92]   The

20  district court and amici concede that "the question addressed in

21  *Cheeks* was limited to Rule [41(a)(1)(A)(ii)] stipulations dismissing

22  FLSA claims with prejudice."[93]   Thus, while *Cheeks* may provide some

23  support for the proposition that Rule 68(a) offers of judgment also

---

[88] Fed. R. Civ. P. 41(a)(1)(A)(ii) (emphasis added).

[89] *Cheeks,* 796 F.3d at 204.

[90] *Id.* at 206.

[91] *Id.*

[92] *Id.* at 201 n.2.

[93] Sec'y of Labor Br. at 28; *see also Hasaki Rest., Inc.,* 319 F.R.D. at 116 ("*Cheeks* may not apply *a fortiori* to a Rule 68 FLSA settlement given its reliance on the language of Rule 41 . . . .").

Case 17-3388, Document 118-1, 12/06/2019, 2720916, Page 27 of 32
Case 1:16-cv-06094-JMF Document 35 Filed 12/06/19 Page 27 of 32

27                                                                No. 17-3388-cv

1    require judicial approval, it is not directly controlling, and we are not
2    required to adopt its reasoning.[94]

3            For the reasons discussed in the preceding section for our
4    conclusion, that the FLSA does not require judicial approval of Rule
5    68(a) offers of judgment, we decline to extend *Cheeks*' judicial
6    approval requirement to that context.  Moreover, we do not believe
7    that all of the reasons supporting the decision in *Cheeks* comfortably
8    apply in the Rule 68(a) context.  For one, Rule 41(a)(1)(A) contains an
9    explicit command that judicial approval of a stipulated dismissal is
10   necessary if a federal statute so requires, but as discussed, Rule 68(a)
11   does not contain a similar, explicit exception.  Also, the *Cheeks* opinion
12   expressed concern that Rule 41(a)(1)(A)(ii) stipulated dismissals are
13   not filed publicly on the docket, and therefore, are akin to the private,
14   secret settlements and waivers of an employee's FLSA rights that the
15   Supreme Court refused to enforce in *Brooklyn Savings* and *Gangi*.[95]
16   Rule 68(a) avoids any secret settlement problem because offers of
17   judgment are publicly filed on the court's docket, as required by the
18   Rule.[96]

19           Nor are we alone in confining *Cheeks* to Rule 41(a)(1)(A)(ii)
20   stipulated dismissals with prejudice; the majority of district court
21   judges to consider the issue in our circuit have also held that *Cheeks*
22   should not be extended to apply to Rule 68(a) offers of judgment.[97]

---

[94] *See generally*, Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. Rev. 1249, 1259 (2006) ("Stare Decisis requires a court to adhere only to its decisions—its holdings—not to any utterance the court may make.").

[95] *Cheeks*, 796 F.3d at 201 (describing the issue as "whether judicial approval of, *and public access to*, FLSA settlements is required" (emphasis added)).

[96] *See* Fed. R. Civ. P. 68(a) (requiring the parties to file the offer and notice of acceptance, plus proof of service, with the district court before the clerk can enter the judgment).

[97] *See Anwar v. Stephens*, No. 15-CV-4493 (JS) (GRB), 2017 WL 455416, at *1 (E.D.N.Y. Feb. 2, 2017) ("The majority of district courts in this Circuit have held that judicial

1    Accordingly, we decline to extend *Cheeks*' holding.

2              d.  The FLSA as a Uniquely Protective Statute

3         Finally, the district court and amici refer to the FLSA's "unique

4    features and policies," or the Act's "remedial and humanitarian

5    goals" as justification for requiring judicial approval of Rule 68(a)

6    offers of judgment settling FLSA claims and it is not difficult to view

7    the Dissent as similarly motivated.  We take issue with this line of

8    reasoning for various reasons.

9         "Congressional intent is discerned primarily from the statutory

10   text."[98]  Appeals to broad remedial goals and congressional purpose

11   are not a substitute for the actual text of the statute when it is clear.[99]

12   In accordance with the Constitution's separation of powers, courts are

13   charged with interpreting the actual text of the laws Congress enacts,

14   and not with rewriting or expanding the scope of the laws in the

15   absence of statutory text, no matter how much one may think it may

16   advance  purported  remedial  goals  or  represent  congressional

17   intent.[100]  Indeed, the Supreme Court very recently emphasized the

---

approval is not required for Rule 68 offers of judgment . . . . This Court concurs
with the majority and declines to ignore the mandatory language of Rule 68."
(internal quotation marks omitted)).

[98] *CTS Corp. v. Waldburger*, 573 U.S. 1, 12 (2014).

[99] *See Magwood v. Patterson*, 561 U.S. 320, 334 (2010) ("We cannot replace the actual
text with speculation as to Congress' intent."); *cf. C.I.R. v. Asphalt Prods. Co., Inc.*,
482 U.S. 117, 121 (1987) ("Judicial perception that a particular result would be
unreasonable may enter into the construction of ambiguous provisions, but cannot
justify disregard of what Congress has plainly and intentionally provided.").

[100] *See Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2169 (2015) ("Our job is to
follow the text even if doing so will supposedly undercut a basic objective of the
statute." (internal quotation marks omitted)); *see also Henson*, 137 S. Ct. at 1725
("[W]hile it is of course our job to apply faithfully the law Congress has written, it
is never our job to rewrite a constitutionally valid statutory text under the banner
of speculation about what Congress might have done had it faced a question that,
on everyone's account, it never faced.").

1    importance of giving the FLSA nothing more than a "fair reading"
2    when it rejected the argument that the FLSA's *statutory* exceptions
3    should be narrowly-construed and characterized the premise that
4    "the FLSA pursues its remedial purpose at all costs" as "flawed."[101]

5         While interpreting the FLSA to require judicial approval of
6    Rule 68(a) offers of judgment settling FLSA claims might be consistent
7    with some of the policy goals of Congress when it enacted the FLSA
8    in 1938, we also agree with Hasaki that the Congressional policy of
9    timely entry of judgment upon acceptance of a Rule 68(a) offer would
10   be frustrated by a judicial approval requirement.  Moreover, the fact
11   that a Rule 68(a) stipulated judgment must be entered by the clerk of
12   the court does not mean that the judgment cannot later be challenged
13   as deficient under the common law of contract[102] or under Rule 60(b)
14   for fraud, misrepresentation, misconduct, or "any other reason that
15   justifies relief."[103]  In any event, we do not see our role as weighing
16   these policy considerations and determining which policy to
17   prioritize when the statute is unambiguous.  That is the job of
18   Congress.[104]

19        Moreover, the fact that a judicial approval requirement might
20   further the broad, remedial policy goals of the FLSA does not
21   necessarily mean that Congress would have enacted such a

---

[101] *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018).

[102] *See Goodheart Clothing v. Laura Goodman Ent.*, 962 F.2d 268, 272 (2d Cir. 1992) (offers of judgment are contracts treated according to ordinary contract principles).

[103] Fed. R. Civ. P. 60(b).

[104] *See Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987) ("[N]o legislation pursues its purpose at all costs.  Deciding what competing values will or will not be sacrificed to the achievement of  a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law.").

requirement if it had considered the question, for "it is quite mistaken to assume, as [amici] would have us, that 'whatever' might appear to 'further the statute's primary objective must be the law.'"[105] Were that the case, we would be a short step away from requiring judicial approval of a variety of settlements that involve vulnerable citizens, such as discrimination suits under Title VII of the Civil Rights Act and § 1983 claims of serious police misconduct.[106]

With respect, the Dissent also disregards the costs imposed by the requirement that it would read into FLSA and thus into Rule 68. A frequently cited district court case in this Circuit on the conduct of fairness reviews cites no fewer than nine factors (as well as the well-worn "totality of the circumstances" standard) to guide the fairness inquiry. *See Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335–36 (S.D.N.Y. 2012) (listing such factors as "the presence of other employees situated similarly to the claimant," the "likelihood that the claimant's circumstance will recur," and "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"). But information regarding these factors may be unavailable in the early stages of litigation during which many Rule 68 offers occur. Often there will not even be basic information concerning the claimed hours worked or rate of pay, leaving courts ill-equipped to conduct a fairness review. *Cf. Mamani v. Licetti*, No. 13-CV-7002 (KMW)(JCF), 2014 WL 2971050, at *2 (S.D.N.Y. July 2, 2014) (finding insufficient information to adjudicate the fairness of a proposed FLSA settlement where the parties failed to provide their estimate of the hours worked or the applicable wage). The reviewing court may thus be required to order the parties to come forward with more information, expending time and resources, and unnecessarily

---

[105] *Henson,* 137 S. Ct. at 1725 (brackets omitted) (quoting *Rodriguez,* 480 U.S. at 526).
[106] *See* Appellant's Br. at 18–19.

Case 17-3388, Document 118-1, 12/06/2019, 2720816, Page31 of 32
Case 1:16-cv-06094-JMF   Document 35   Filed 12/06/19   Page 31 of 32

31                                                              No. 17-3388-cv

1    increasing attorney's fees.  *See Picerni v. Bilingual Seit & Preschool Inc.*,
2    925 F. Supp. 2d 368, 377 (E.D.N.Y. 2013) (noting that "the vast majority
3    of FLSA cases" involve claims that "are simply too small, and the
4    employer's finances too marginal, to have the parties take further
5    action if the Court is not satisfied with the settlement"), *abrogated by*
6    *Cheeks*, 796 F.3d 199 (2d Cir. 2015).  And this means delay.  As
7    represented at oral argument, a fairness hearing could impose a delay
8    of more than six months on the recovery due to plaintiffs.

9        We do not dwell here on policy considerations given that it is
10   not possible on this record to perform a cost–benefit analysis as to the
11   requirement of fairness hearings in Rule 68 settlements of the
12   thousands of FLSA cases filed in this Circuit each year.  And even if
13   such an analysis were possible, that is not our job.  As the Dissent
14   would have it, this court should insert a paternalistic judicial fairness
15   proceeding into Rule 68(a) settlements of FLSA claims that Congress
16   does not require and the parties, represented by counsel, do not want.
17   Our holding to the contrary, and our reasoning supporting it, is
18   dismissed as "simplistic" by the Dissent, to which our answer is that
19   there are frequently times when "less is more,"[107] and this is one of
20   them.    Congress  knows  how  to  require  judicial  approval  of
21   settlements and dismissals when it wants to.[108]  Appeals to the broad
22   remedial goals and uniquely protective qualities of the FLSA do not
23   authorize us to write a judicial approval requirement into the FLSA,
24   and thereby into Rule 68(a), when the text of both provisions is silent
25   as to such a requirement.

26

---

[107] *See generally* Phillip C. Johnson, *Miles van der Rohe* 49 (1947) (ascribing the phrase
"less is more" to the minimalist architect, Miles van der Rohe).
[108] *See supra* Section I.

1                            **CONCLUSION**

2        We have considered amici's other arguments and find them to

3 be without merit.[109]  For the reasons we have stated, we hold that

4 judicial approval is not required of Rule 68(a) offers of judgment

5 settling FLSA claims.  We therefore REVERSE and VACATE the

6 district court's order to the contrary and REMAND to the district

7 court with instructions that the Clerk of the Court enter the judgment

8 as stipulated in the parties' accepted Rule 68(a) offer.

A True Copy

Catherine O'Hagan Wolfe, Clerk

United States Court of Appeals, Second Circuit

---

[109] Appointed amicus also makes the argument that because Rule 68(a) offers of judgment are "contracts to be interpreted according to ordinary contract principles," *Steiner v. Lewmar, Inc.*, 816 F.3d 26, 31 (2d Cir. 2016), and because "employees cannot waive their rights under the FLSA, they cannot validly accept offers to settle their claims unless the offers are approved by the court or DOL," PCLG Br. at 21–22.  This argument confuses the concepts of capacity to enter a contract with enforceability of a contract.  In *Brooklyn Savings* and *Gangi*, the Supreme Court described the question as whether waivers and releases of FLSA liability were enforceable as an affirmative defense for liquidated damages.  At no time did the Court discuss, or did the parties argue, that the employees' agreements to waive or release their rights to liquidated damages under FLSA were invalid for lack of contractual capacity.  Indeed, if employees had no contractual capacity to settle or dismiss their FLSA claims, then there would have been no need for the Court to expressly reserve the question of whether an employee's release of his right to liquidated damages as part of a bona fide settlement of a bona fide dispute over the number of hours worked or the regular rate of pay would be enforceable.  *See Gangi,* 328 U.S. at 114–15.